UNITED STATES DISTRICT COURT

| | |
|---|---|
| JASMINE BOYD-PERRY, * | |
| * | |
| Plaintiff, * | |
| * | |
| v. * | Civil Action No. 1:24-cv-10606-IT |
| * | |
| MARBLEHEAD PUBLIC SCHOOLS, * | |
| JOHN BUCKEY AND NAN MURPHY, * | |
| * | |
| Defendants. | |

MEMORANDUM & ORDER
January 3, 2025

TALWANI, D.J.

Pending before the court in this employment litigation is Defendants John Buckey and Nan Murphy's (the "Individual Defendants") Partial Motion to Dismiss [Doc. No. 15] Plaintiff Jasmine Boyd-Perry's Complaint [Doc. No. 1-1]. The Individual Defendants argue that: (1) Count Nine for wrongful termination in violation of public policy should be dismissed because Plaintiff has a statutory remedy; and (2) Count Twelve should be dismissed because the Massachusetts Civil Rights Act does not apply to alleged wrongs that might have been the subject of investigation and possible vindication under M.G.L. c. 151B. See Mem. Supp. Def.'s MTD at 7, 9 [Doc. No. 16].

For the reasons set forth herein, the Individual Defendants' motion is GRANTED IN PART and DENIED IN PART.

I.  **Background as Alleged in the Complaint**

Plaintiff claims the following:

Plaintiff began her employment with Defendant Marblehead Public Schools ("MPS") as its METCO Director in August 2019. Compl. ¶ 6 [Doc. No. 1-1].[1] Plaintiff is a Black and Native/Indigenous non-binary female, and during her tenure with MPS, she was the only Black female District Administrator and one of only two Black employees in the MPS system. Id. ¶¶ 6, 8. At all times relevant to this dispute, Defendant Buckey was MPS's Superintendent and Defendant Murphy was its Assistant Superintendent. Id. ¶¶ 3, 4. As METCO Director, Plaintiff reported directly to Defendants Buckey and Murphy. Id. ¶ 14. On January 7, 2021, MPS terminated Plaintiff's employment. Id. ¶ 75.

Plaintiff's 166 paragraph Complaint [Doc. No. 1-1] details Defendants' alleged wrongful conduct, which this court summarizes under the headings used in the Complaint.

    A.  Disparate Treatment and Racially Hostile Work Environment

        1.  Administrative Conduct

During her tenure with MPS, Plaintiff was subjected to terms and conditions of employment that were disparate from her White colleagues'. In July 2020, under Defendant Buckey's administration, Defendants did not "timely" provide Plaintiff with a renewal contract and paperwork. Id. ¶ 22. Per her contract for the 2019-2020 school year, Plaintiff was not required to work during the summer of 2020. Id. ¶ 25. Nonetheless, she rendered services throughout most of that summer because she feared Defendants would not otherwise continue to retain her services as METCO Director. Id. ¶ 23.

In asking Plaintiff to render such services, Defendants said that if Plaintiff cared about her students, she would work without regard to compensation; indeed, Plaintiff was not

---

[1] The METCO program, funded by the Commonwealth of Massachusetts, permits students from certain cities to attend public schools in other communities, including MPS. Id. ¶ 10.

compensated for her summer work. Id. ¶ 26. By contrast, her white colleagues were compensated and "shown praise and appreciation" for similar summer work. Id.

On or about September 16, 2020, Plaintiff became aware of an incident in which white MPS students "Zoom bombed" METCO students and called them racial slurs (including the "N-word"). Id. ¶ 45. When Plaintiff informed Defendant Buckey about this incident and her opposition to such conduct, Defendant Buckey instructed Plaintiff to remain silent. Id. Also in September 2020, white supremacist groups in Marblehead harassed multiple MPS students. Id. ¶ 46. During or around the week of September 16, 2020, Plaintiff and Defendants discussed MPS students' acts of white supremacy at least twice—and on another occasion, Plaintiff informed Defendants about an incident in which a white MPS student "racially harmed" a Black non-METCO student. Id. Defendant Buckey again instructed Plaintiff to remain silent about these events and told her that MPS needed to "get around this." Id. ¶ 47. Defendant Buckey then required Plaintiff to write a statement—"We're all METCO"—that Plaintiff felt would misrepresent racial relations in Marblehead; Plaintiff complied for fear of losing her livelihood. Id. ¶ 48.

On or about August 17, 2020, Plaintiff expressed concern about her medical disability and requested accommodations—including the opportunity to continue working from home (because of risks that COVID-19 posed to her health). Id. ¶ 51. On August 28, 2020, Defendant Buckey told Plaintiff that she could work from home but would be required to work in person should an emergency arise. Id. That same day, Plaintiff and Defendant Buckey confirmed their agreement via email. Id. ¶ 52. Then, on or about August 31, 2020, Plaintiff provided Defendant Buckey with an updated physician's certification detailing her chronic medical conditions and affirming that she required self-isolation. Id. ¶ 54. However, despite Defendant Buckey's

agreement, Defendants required Plaintiff to be present in person at MPS locations each day. Id. ¶ 57.

In September 2020, Plaintiff experienced a panic attack. Id. ¶ 58. As her health had deteriorated further, she required a medical leave of absence on or about September 23, 2020, through September 28, 2020. Id. ¶ 59.

On or about October 5, 2020, Defendants provided Plaintiff with correspondence denying her accommodation request—and Defendant Buckey expressed that if within a few days Plaintiff did not accept the accommodation he had offered, he could only provide her unpaid medical leave, effective immediately until the fall of 2021. Id. ¶¶ 61, 62. Plaintiff attempted to discuss other alternatives with Defendant Buckey (for example, working in a nearby empty building), but he rejected such efforts. Id.

At around the time when Plaintiff made her accommodation request, a white, male colleague had also made an accommodation request to work remotely—and Defendants granted it, allowing him to work from home full-time. Id. ¶ 60.

In October 2020, Plaintiff suffered another panic attack and fainted, resulting in two hospital visits. Id. ¶ 67. Her physician ordered her to remain out of work from approximately October 8, 2020, to October 9, 2020—and then again from approximately October 13, 2020, through November 3, 2020. Id. Plaintiff communicated these medical setbacks to Defendants via email—but Defendants' two written communications dated October 16, 2020, and October 19, 2020, failed to inquire after the status of Plaintiff's wellbeing and were "harsh, critical of [Plaintiff] and demeaning[.]" Id.

On or about January 3, 2021, Plaintiff emailed Defendant Buckey to (1) inform him that her medical provider had not yet cleared her to safely return to work; and (2) request additional

time for her leave. Id. ¶ 73. When Defendants responded to Plaintiff on January 3, 2021, they demanded that she return to work on January 4, 2021—and did not provide Plaintiff with any further accommodation. Id. ¶ 74.

Following this, due to another "medical setback," Plaintiff could not check her email until January 7, 2021, at which point she first discovered Defendants' correspondence from January 3, 2021. Id. ¶ 75. On January 7, 2021, she also found an email from Defendant Buckey dated January 7, 2021, informing Plaintiff that her MPS employment had been terminated, effective the same day. Id. During the week of January 4, 2021, Plaintiff did not receive any telephone communication from Defendants regarding her medical status and leave. Id. ¶ 76.

To justify Plaintiff's termination, Defendants claimed that she had "abandoned" her position; however, before January 12, 2021, Plaintiff had been unable to schedule a medical appointment addressing her clearance to return to work. Id. ¶¶ 77, 78. In fact, she was looking forward to seeing her students again and to sharing holiday cards she had prepared. Id. ¶ 79.

Plaintiff's legal representative contacted Buckey on or about January 7, 2021, and reiterated Plaintiff's position that she had not abandoned her job; however, Defendants did not seek to remedy Plaintiff's termination or discuss Plaintiff's accommodation options. Id. ¶¶ 80, 81.

2. Staff Action Also Contributed to the Racially Hostile Work Environment

Plaintiff was also often muted or ignored during Defendants' Zoom meetings if she voiced concerns about METCO students being left out of MPS's district-wide initiatives and considerations (i.e., sports and transportation). Id. ¶ 104. For instance, during a meeting on or about October 4, 2020, Plaintiff requested that Dan Bauer—the MPS high school principal—ask teachers whether they could provide supervision and support for METCO students during meals.

5

Id. ¶ 105. Bauer ignored Plaintiff's request, represented that no more questions had been asked, and ended the meeting. Id.

Staff ignored Plaintiff's ideas and suggestions—such as a suggestion to implement a book club or reading list on racial inequality—but later adopted some of the same when proposed by Plaintiff's white colleagues. Id. ¶¶ 106-108.

MPS staff and teachers asked Plaintiff to handle situations involving students of color on the assumption that these students were METCO students because they were Black. Id. ¶¶ 109-10, 113. Staff also assumed Plaintiff to be the parent of METCO students because of her race. Id. ¶ 111.

MPS staff lied about Plaintiff. Id. ¶ 114. For instance, the principal of one school lied about Plaintiff in an email concerning student absences, and the Director of Special Education falsely represented that Plaintiff was responsible for onboarding students with Individualized Education Plans ("IEPs"). Id. ¶¶ 114-15.

B.  Causes of Action Asserted Against the Individual Defendants

Plaintiff alleges in Count Four that the Individual Defendants discriminated against Plaintiff in violation of Mass. G.L. c. 151B on account of her race and/or ethnic or national origin and aided and abetted MPS's racial discrimination. Id. ¶¶ 131-33. She alleges in Count Six that the Individual Defendants discriminated against Plaintiff on account of her disability and aided and abetted MPS's unlawful discrimination based on disability, in violation of Mass. G.L. c. 151B. Id. ¶ 140-42.

Plaintiff alleges in Counts Seven and Eight that Defendants' conduct constitutes a violation of the Family and Medical Leave Act and a violation of public policy. Id. ¶¶ 143-44, 149-50. She alleges in Count Nine that Defendants' conduct resulted in her wrongful termination following "her opposition to unlawful practices by the Defendants, as set forth above." Id. ¶ 155.

6

She alleges in Count Ten that the Individual Defendants interfered with her contractual relations "following her report of unsafe and unlawful patient care." Id. ¶ 159. In Count Twelve, she alleges that in taking the actions described earlier in the Complaint, the Individual Defendants violated the Massachusetts Civil Rights Act, G.L. c. 12, § 11H, with "threats, intimidation, and coercion." Id. ¶ 165.[2]

## II. Standard of Review

In evaluating a motion to dismiss for failure to state a claim, the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 555 (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## III. Discussion

### A. Count Nine

The Individual Defendants argue that Plaintiff cannot maintain a claim based on a common-law cause of action for wrongful termination in violation of public policy because

---

[2] Plaintiff also asserted Title VII claims in Counts Three (for unlawful retaliation) and Four (for discrimination) and a claim under the Massachusetts Whistleblower Act in Count Eleven. The Individual Defendants' motion challenged each of these on the ground that these statutes do not provide for individual liability. Plaintiff has agreed to voluntarily dismiss these claims against the Individual Defendants. See Pl.'s Opp'n to MTD at 1 n. 1 [Doc. No. 28].

M.G.L. c. 151B, § 4(1) provides a remedy for the wrongs alleged by Plaintiff. See Mem. Supp. Def.'s MTD at 7-8 [Doc. No. 16]. This court agrees, where Plaintiff has not asserted the violation of a public policy for which Massachusetts does not provide a statutory remedy.

"'As an exception to the general rule that an employer may terminate an at-will employee at any time with or without cause, [the Supreme Judicial Court of Massachusetts has] recognized that an at-will employee has a cause of action for wrongful termination only if the termination violates a clearly established public policy.'" Barbuto v. Advantage Sales and Marketing, LLC, 477 Mass. 456, 471 (2017) (quoting King v. Driscoll, 418 Mass. 576, 582 (1994)). "The rationale for implying a private remedy under the 'public policy exception' to the traditional rule governing at-will employment contracts is that, unless a remedy is recognized, there is no other way to vindicate such public policy." Melley v. Gillette Corp., 19 Mass. App. Ct. 511, 511-12 (1985), aff'd 397 Mass. 1004 (1986).

Accordingly, a plaintiff generally cannot bring a claim for unlawful termination in violation of public policy where another remedial scheme addresses the policy underlying the claim. "It makes no difference whether the remedial scheme is created by state or federal law." Perez v. Greater New Bedford Vocational Technical School Dist., 988 F. Supp. 2d 105, 113 (D. Mass. 2013) (citing Valerio v. Putnam Associates, Inc., 173 F.3d 35, 46 (1st Cir. 1999)). For instance, in Melley, the court declined to create a common-law remedy to address the plaintiff's allegedly unlawful termination in violation of a strong public policy against age discrimination because "the public policy against age discrimination [was] already protected by" c. 151B. 19 Mass. App. Ct. at 512.

Here, Plaintiff specifically references only her "opposition to unlawful practices by the Defendants, as set forth above." Compl. ¶ 155 [Doc. No. 1-1]. In other words, Plaintiff's claim

for wrongful termination in violation of public policy is the same as that underlying her other claims listed above, including her claims for a hostile work environment under c. 151B, racial and ethnic discrimination under c. 151B, retaliation under c. 151B, disability discrimination under c. 151B and the Americans with Disabilities Act, and retaliation under the Family and Medical Leave Act. Where Plaintiff has a statutory means to vindicate the public policies she has identified, the exception to the at-will rule for terminations in violation of public policy does not apply.

Plaintiff argues that common law rights are not limited by the "exclusivity provision" of Mass. G.L. c. 151B and that she is permitted to pursue alternative forms of relief pursuant to Rule 8 of the Federal Rules of Civil Procedure. Pl.'s Opp'n to MTD at 10 [Doc. No. 28]. These arguments miss the point. The issue is not whether an employee is foreclosed by c. 151B from raising any common law claim; notably, the Individual Defendants have not sought dismissal of the interference with contract claim asserted against them. See Compl. ¶ 159; Comey v. Hill, 387 Mass. 11, 20 (1982) (holding that an employee was not foreclosed by c. 151B from raising an unlawful interference claim, even though plaintiff's unlawful interference claim was based on an allegation that plaintiff's firing was based on age discrimination). The issue is whether the narrow exception to the at-will employment rule, allowing a claim for wrongful termination in violation of public policy, applies here where Plaintiff has statutory remedies. It does not.

Therefore, the Individual Defendants' Motion to Dismiss Count Nine is GRANTED.

B.  Count Twelve

The Individual Defendants seek to dismiss Count Twelve, which alleges violations of the Massachusetts Civil Rights Act ("MCRA"), M.G.L. c. 12, § 11H, on the grounds that Plaintiff's claims are the subject of her claims under Chapter 151B. See Mem. Supp. Def.'s MTD at 9 [Doc. No. 16].

The MCRA prohibits a person from "interfer[ing] by threats, intimidation or coercion, or attempt[ing] to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth[.]" M.G.L. c. 12, § 11H. The Individual Defendants argue that this statute "'do[es] not create an independent right to vindicate an alleged wrong which might have been the subject of investigation and possible vindication under G.L. c. 151B." Mem. Supp. Def.'s MTD at 9 [Doc. No. 16], quoting Mouradian v. Gen'l Elec. Co., 23 Mass. App. Ct. 538, 543 (1987) and citing additional cases. Plaintiff responds first that Chapter 151B's exclusivity provision does not bar her claim, see Pls. Opp'n to MTD at 11 [Doc. No. 28], but offers no meaningful response as to the cases cited.

However, Plaintiff does assert that her MCRA claim should survive because it is based, in part, on an alleged deprivation of the constitutional right to contract—an allegation that Plaintiff says is distinct from her allegation of employment discrimination. Id. Plaintiff's argument finds support in Cavicchi v. Raytheon Co., 16 F. Supp. 3d 4, 9 (D. Mass. 2014), in which the court declined to dismiss plaintiff's M.G.L. c. 151B claim where the claim was based on an allegation that his firing unconstitutionally deprived him of the right to contract, while his MCRA claim was based on employment discrimination due to a disability. Defendants' briefing does not address this asserted right to contract.

Accordingly, Defendant's motion to dismiss Count Twelve is DENIED.

## IV. Conclusion

For the foregoing reasons, Plaintiff's Title VII claims in Counts Three (for unlawful retaliation) and Four (for discrimination) and her Massachusetts Whistleblower Act claim in Count Eleven are considered withdrawn. Defendant's Partial Motion to Dismiss [Doc. No. 15] is

GRANTED as to Count Nine (Wrongful Termination in Violation of Public Policy) and DENIED as to Count Twelve.

    IT IS SO ORDERED.

January 3, 2025                              /s/ Indira Talwani
                                                      United States District Judge